UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| LEONARD McQUAY, aka KHALFANI MALIK KHALDUN, | ) ) ) | |
| Petitioner | ) ) | |
| v. | ) ) | No. 3:02cv0852 AS |
| DANNY McBRIDE, | ) ) ) | |
| Respondent | ) | |

*MEMORANDUM AND ORDER*

On November 25, 2002, *pro se* petitioner, Leonard McQuay, also known as Khalfani Malik Khaldun, an inmate at the Wabash Valley Correctional Facility (WVCF) in Carlisle, Indiana, filed a petition seeking relief under 28 U.S.C. §2254. The Court now has before it eight volumes of proceedings from the courts of the State of Indiana filed on May 30, 2003. The amended petition filed by the petitioner on June 2, 2003, merely restates in a slightly more readable form the claims that were advanced earlier. The Response filed on behalf of the respondent by the Attorney General of Indiana on May 30, 2003, demonstrates the necessary compliance with *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982). The petitioner filed a Traverse on June 12, 2003, which this Court has carefully examined.

The petitioner is a convicted felon serving a sentence imposed by a court in the State of Indiana. This Court has a very elaborate record before it. Some basics need to be understood at the outset. The collateral review that is envisioned by § 2254 focuses on violations of the Constitution, treaties and laws of the United States. *See Bell v. Duckworth,*



861 F.2d 169 (7th Cir. 1988), *cert. den.*, 489 U.S. 1088 (1989). The focus is not on violations of state law. *See Estelle v. McGuire*, 502 U.S. 62 (1991).

To begin, it is helpful to cite and enclose the unpublished memorandum decision of the Court of Appeals of Indiana entered April 8, 2002, authored by Judge Riley and concurred in by Judge Mathias. The Court also notes the separate concurrence of Chief Judge Brook. For the immediate reference of all concerned, the memorandum decision is marked as Appendix "A", attached hereto and incorporated herein. A petition to transfer on the aforesaid opinion of the Court of Appeals of Indiana was denied by the Supreme Court of Indiana on June 25, 2002.

Certainly, the facts found by the Court of Appeals of Indiana are entitled to a rebuttable presumption of correctness under 28 U.S.C. §2254(e)(1), and the burden is on the petitioner to show the same by clear and convincing evidence. The issues purportedly raised in the petition to transfer to the Supreme Court of Indiana causes the need to reference *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999).

Reference is made to claims under *Brady v. Maryland*, 373 U.S. 83 (1963). *See also United States v. Agurs*, 427 U.S. 97 (1976). At most this is a state court issue under *Estelle v. McGuire*, 502 U.S. 62 (1991). It does not appear that any claim is made here under *Bruton v. United States*, 391 U.S. 123 (1968). Of significant importance are two unanimous decisions of the Supreme Court of the United States decided November 2, 2002. *See Early v. Packer*, 123 S.Ct. 362 (November 4, 2002), and *Woodford v. Visciotti*, 123 S. Ct. 357, 360-61 (November 4, 2002). Certainly double jeopardy is prohibited by the Fifth

2

Amendment of the Constitution of the United States, and that constitutional protection has been incorporated into the Fourteenth Amendment of the Constitution of the United States and made binding on the states. There is no argument about that. This claim was abandoned in regard to the petition to transfer to the Supreme Court was already suggested by the citation of *O'Sullivan*. This court has ruled that the Fifth Amendment double jeopardy does not apply to prison disciplinary proceedings. *See Rowold v. McBride*, 973 F.Supp. 829, 834 (N.D. Ind. 1997). *See also Meeks v. McBride*, 81 F.3d 717 (7th Cir. 1996).

The issue with regard to the state court admission of a knife in evidence does not implicate the due process clause of the Fourteenth Amendment of the Constitution of the United States, and the Court of Appeals of Indiana got this issue correct. There is a speedy trial issue raised that this Court does not conceive it to be under *Barker v. Wingo*, 407 U.S. 514 (1972), but rather an interpretation of state law.

This Court has given close attention to the memorandum filed by this *pro se* petitioner which seems to be the same as the one contained in the amended petition filed June 2, 2003. A careful examination of this massive record fails to disclose a constitutional basis presented by this petitioner for relief under 28 U.S.C. §2254. Such is now **DENIED**. **IT IS SO ORDERED**.

DATED: June 18, 2003

s/Allen Sharp

**ALLEN SHARP, JUDGE**
**UNITED STATES DISTRICT COURT**

Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

BRIAN J. MAY
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

STEVE CARTER
Attorney General of Indiana

CECELIA K. HEMPHILL
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| LEONARD McQUAY, | ) |
| Appellant-Defendant, | ) ) ) |
| vs. | ) No. 71A03-0106-CR-199 ) |
| STATE OF INDIANA, | ) ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable William T. Means, Judge
Cause No. 71D01-9508-CF-385

April 8, 2002

MEMORANDUM DECISION - NOT FOR PUBLICATION

RILEY, Judge

APPENDIX "A"

## STATEMENT OF THE CASE

Appellant-Defendant, Leonard McQuay (McQuay), appeals his conviction of murder, a felony, Ind. Code § 35-42-1-1.

We affirm.

## ISSUES

McQuay raises four issues on appeal, which we restate as follows:

1. Whether the trial court erred in denying his motion to dismiss based on double jeopardy.

2. Whether the trial court erred in denying his motion for mistrial based on discovery violations.

3. Whether the trial court erred in admitting State's Instruction No. 4 and State's Instruction No. 5.

4. Whether the trial court erred in overruling his objection to the admission of State's Exhibit 15, a homemade knife.

## FACTS AND PROCEDURAL HISTORY

On December 13, 1994, Correctional Officer Phillip Curry (Curry) was murdered by an inmate at the Indiana State Prison in Michigan City, Indiana. Correctional Officer James Bottorff (Bottorff) testified that on December 13, 1994:

> I was watching the front of the block and I was looking on 300 range, and I seen an offender walk up to Officer Curry and there was a sudden movement with the offender's right elbow hand [sic] and there was a loud pop I could hear. Then immediately thereafter, I could see the offender's arm do an overhand-type strike in the neck or top of the shoulder area.

2

(Tr. 183). Bottorff stated that he never saw the offender's face.

Additionally, Correctional Officer Michael Beans (Beans) testified that on December 13, 1994, he heard a loud ruckus at the prison. Upon investigating the noise, Beans saw Curry in a corner with one hand on his neck. When asked if Curry said anything to him, Beans testified that Curry said, "Khalfani did it." (Tr. 238). Khalfani Khaldun is the Muslim name used by McQuay. Moreover, Beans saw McQuay walking away moments after Curry stated that "Khalfani did it." (Tr. 238). While he did not see McQuay's face, Beans said that the person walking away was wearing a jean jacket with a green hooded sweatshirt underneath, which is what McQuay "always wore." (Tr. 240).

As several people attempted to help Curry, Beans heard Curry say "I'm not going to make it." (Tr. 242). Eventually, Curry died. Dr. James Urban (Urban) conducted an autopsy of Curry on December 14, 1994. During the examination of Curry's body, Urban found two (2) incisive wounds, one (1) on his left chest and one (1) behind his left ear. Urban determined that whatever produced Curry's wounds must have been fairly sharp. He testified that "[i]t was not something that would be caused accidentally as in a tearing." (Tr. 295). On the day of the murder, a homemade knife was found in a garbage bag that was taken from the wing of the prison where McQuay's cell was located.

On January 26, 1995, an information was filed against McQuay, charging him with murder. On March 19, 2001, McQuay filed a motion to dismiss, claiming a double jeopardy violation. On March 26, 2001, the trial court denied McQuay's motion to dismiss.

On March 19, 2001, McQuay objected to any new DNA evidence and/or results of the DNA evidence. McQuay asked the trial court to suppress such evidence as it was being offered after the discovery deadline. That same day, the trial court declined to exclude the evidence.

On March 26-31, 2001, a jury trial was held. At trial, McQuay objected to the admission of State's Exhibit 15, the homemade knife. McQuay's counsel argued as follows:

> Your Honor, I'm going to object because the doctor was never shown this and was never asked to make any comparison. There's no forensic evidence whatsoever that connects this to the injuries on Mr. Curry. This officer doesn't have any knowledge of whether it would fit.
>
> And I think under [Ind. Evidence] Rule 403, it's unfair since there's absolutely no connection whatsoever to the specifics of this case, other than it's recovered on the same day.

(Tr. 272). The trial court overruled McQuay's objection.

Also at trial, the State introduced evidence of a blood wipe taken off the light switch in McQuay's cell. Carl Sobieralski (Sobieralski), a forensic scientist with the Indiana State Police, testified that the DNA isolated from the blood wipe was consistent with the DNA profile of McQuay and of another person; Curry's DNA was eliminated as a possible source. McQuay, during cross examination, moved to strike Sobieralski's testimony and moved for a mistrial. McQuay's counsel argued, "those tests were never, never given to the defense. The

exclusions of the unknown person and the DNA that was done back in '96 have never been provided in discovery." (Tr. 487). The trial court denied the motion to strike and the motion for a mistrial. Additionally, Mary Reed (Reed), a forensic DNA analyst with the Indiana State Police Laboratory, testified that samples from the blue jeans McQuay wore on the day of the murder indicated a mixture of McQuay's DNA and Curry's DNA with no unknown contributors.

Prior to the jury's verdict being rendered, McQuay objected to State's Instruction No. 4 and State's Instruction No. 5. State's Instruction No. 4 provided, "A person may be convicted of a crime upon the uncorroborated testimony of the victim." (Appellant's App. p. 139). McQuay's counsel argued, "[a]ll of the cases in support of that instruction are cases involving the live testimony of the victim, not hearsay cases. However the victim is not available for the jury to judge the demeanor or evidence, so I don't believe that should have been given in this case." (Tr. 656). State's Instruction No. 5 provided, "Motive is that which prompts a person to act. The State is not required to prove a motive for the commission of the crime charged." (Appellant's App. p. 140). McQuay's counsel argued:

> I also object to that if the State tries to assert a motive. They're not trying to —
> if they say throughout and consistent throughout that they don't have to prove
> motive, I don't object to that instruction. But when they assert one and try to
> convey that there is one. I don't ask that it be added as an element, but I ask
> that that instruction not be given.

(Tr. 656). The instructions were allowed over McQuay's objection.

On March 31, 2001, the jury found McQuay guilty of murder. On April 20, 2001, a sentencing hearing was held. McQuay was sentenced to the Indiana Department of Correction for an enhanced term of sixty (60) years.

McQuay now appeals. Additional facts will be supplied as necessary.

## DISCUSSION AND DECISION

### I. *Double Jeopardy*

McQuay argues that the trial court erred in denying his motion to dismiss. Specifically, McQuay argues that his protections against double jeopardy were violated. We disagree.

On May 10, 1995, the prison's Conduct Adjustment Board conducted a hearing to determine whether McQuay was guilty of murder. It was determined, by a preponderance of the evidence, that McQuay stabbed Curry on December 13, 1994, causing Curry's death. Because of its finding of guilt, the prison's Conduct Adjustment Board placed McQuay in a segregated disciplinary unit at the prison for three (3) years and reassigned McQuay from credit class 1 to credit class 3, giving him two (2) additional years of incarceration. With this in mind, McQuay contends that this punishment coupled with the trial court's sentence on his murder conviction amounts to a double punishment for the same crime, violating his protections against double jeopardy.

In *State v. Mullins*, 647 N.E.2d 676, 678 (Ind. Ct. App. 1995), this court held:

> A defendant has a constitutional right not to be put twice in jeopardy for the same offense. The concept of double jeopardy embraces prohibitions against successive prosecution and multiple punishment for the same offense.

> However, this constitutional prohibition of double jeopardy applies only to criminal prosecutions. An administrative punishment by prison officials does not preclude a subsequent prosecution arising out of the same act. The Department of Correction is authorized to administratively punish actions done within the prison walls by imposing disciplinary sanctions. However, the Department may not lengthen a convict's term in prison.
>
> * * *
>
> By statute, Indiana provides for the allocation of credit time and the deprivation of credit. Credit time is based upon the behavior of the prisoner. Receipt of credit is conditional upon continued good behavior and may be revoked. A person may be deprived of any part of the credit time he has earned for a violation of a rule of the Department of Correction.
>
> Credit time is a statutory reward for a lack of conduct that is in violation of institutional rules. It is earned toward release on parole for felons, and does not diminish the fixed term or affect the date on which the offender will be discharged.

*Id.* (citations omitted).

McQuay maintains that his punishment goes beyond taking away any earned credit time, as he was also placed in a segregated disciplinary unit. McQuay's argument is not well taken. "Credit time is a bonus created by statute and the deprivation of credit time does nothing more than take that bonus away." *Id.* Further, "[t]he deprivation of credit time cannot lengthen the fixed term of a prisoner's sentence and therefore cannot rise to the level of impinging upon a fundamental liberty interest triggering double jeopardy concerns." *Id.* It is clear that the disciplinary action taken against McQuay did not trigger double jeopardy concerns. The taking away of McQuay's credit time did not lengthen the fixed term of his sentence. Moreover, his placement in a segregated disciplinary unit did not lengthen the

7

fixed term of his sentence. The Indiana Department of Correction did nothing more than administratively punish McQuay for his actions done within the prison walls by imposing disciplinary sanctions. *Id.* This administrative punishment by prison officials does not preclude a subsequent prosecution arising out of the same act. *Id.* Therefore, we cannot find that the trial court erred in denying his motion to dismiss based on double jeopardy.

## II. *Discovery*

McQuay argues that the trial court erred in denying his motion for a mistrial based on discovery violations. "[A] mistrial is an extreme remedy warranted only when no other curative measure will rectify the situation and whether to grant a motion for a mistrial is a matter committed to the sound discretion of the trial court." *DeBerry v. State*, 659 N.E.2d 665, 669 (Ind. Ct. App. 1995). Additionally, in *Gardner v. State*, 724 N.E.2d 624, 627 (Ind. Ct. App. 2000), *trans. denied*, this court held:

> Our standard of review on appeal of discovery matters is that "[t]he trial court is in the best position to determine the effect of violations of its discovery orders." *Cohen v. State*, 560 N.E.2d 1246, 1248 (Ind. 1990). Thus, trial courts are afforded broad discretion in ruling on discovery matters, and we will reverse only in cases of clear error. *Id.* Generally, a discovery violation will not result in reversal unless prejudice has resulted. *Id.* Further, "the appropriate standard of review in all instances of prosecutorial failure to disclose evidence: [is that] 'evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result would have been different.'" *Lyons v. State*, 600 N.E.2d 560, 564 (Ind. Ct. App. 1992) (citation omitted).

Prior to trial, McQuay objected to any new DNA evidence and/or results of the DNA evidence. McQuay asked the trial court to suppress such evidence as it was being offered

8

after the discovery deadline. The trial court declined to exclude the evidence. At trial, the State introduced evidence of a blood wipe taken off the light switch in McQuay's cell. Sobieralski testified that the DNA isolated from the blood wipe was consistent with the DNA profile of McQuay and of another person; Curry's DNA was eliminated as a possible source. McQuay, during cross examination, moved to strike Sobieralski's testimony and moved for a mistrial, arguing that these test results were not given to the defense. The trial court denied the motion to strike and the motion for a mistrial.

With the above in mind, we find that there was substantial evidence from which the jury could have concluded that McQuay murdered Curry, regardless of Sobieralski's testimony. Curry told Beans that "Khalfani did it." (Tr. 238). Moreover, Reed testified that samples from the blue jeans McQuay wore on the day of the murder indicated a mixture of McQuay's DNA and Curry's DNA with no unknown contributors.

The fact that an unknown person deposited DNA on the light switch in McQuay's cell does not undermine confidence in the jury's verdict. It may establish that someone other than McQuay touched the light switch, as Sobieralski testified that the unknown DNA source could have been skin cells, rather than blood. However, it does not implicate another person in Curry's murder. Thus, we cannot find that there is a reasonable probability that, had the DNA test results been disclosed to the defense, the result of the proceeding would have been different. *See Gardner*, 724 N.E.2d at 627. Therefore, we find that the trial court did not

9

abuse its discretion when it denied McQuay's motion for a mistrial. *See DeBerry*, 659 N.E.2d at 669.

### III. *State's Instructions*

McQuay argues that the trial court erred in admitting State's Instruction No. 4 and State's Instruction No. 5. The decision to give or refuse a tendered jury instruction is within the trial court's sound discretion and is only reviewed for an abuse of discretion. *Hollowell v. State*, 707 N.E.2d 1014, 1023 (Ind. Ct. App. 1999). "An abuse of discretion will be found only where the individual instruction is erroneous or where the instruction, taken as a whole misstates the law or otherwise misleads the jury." *Id.* Furthermore, before McQuay is entitled to a reversal, he must demonstrate that the error concerning the jury instructions prejudiced his substantial rights. *See id.* "Jury instructions are to be considered as a whole and in reference to each other; error in a particular instruction will not result in reversal unless the entire jury charge misleads the jury as to the law in the case." *Edgecomb v. State*, 673 N.E.2d 1185, 1196 (Ind. 1996), *reh'g. denied*. "The test of whether a tendered instruction is proper is whether there is evidence to support giving the instruction, whether the substance of the tendered instruction is covered by other instructions, and whether the instruction is a proper statement of the law." *Warthen v. State*, 588 N.E.2d 545, 546-47 (Ind. Ct. App. 1992).

### A. *"A person may be convicted of a crime upon the uncorroborated testimony of the victim"*

With regard to State's Instruction No. 4, McQuay admits that it is a correct statement of law. However, McQuay argues that the instruction is not a correct statement of the evidence, in that Curry did not testify. We agree with McQuay that this instruction should not have been given, as there was no testimony of the victim. Nonetheless, McQuay has not demonstrated, or even claimed, that the error concerning State's Instruction No. 4 prejudiced his substantial rights. *See Hollowell*, 707 N.E.2d at 1023. There was substantial evidence from which the jury could have concluded that McQuay murdered Curry. Accordingly, we cannot find that the error warrants a reversal of McQuay's conviction.

### B. *"Motive is that which prompts a person to act. The State is not required to prove a motive for the commission of the crime charged."*

With regard to State's Instruction No. 5, McQuay admits that it is a correct statement of law. However, he argues that it is unfair that the State was allowed to assert a possible motive, yet did not have to prove its assertion. The fairness of this instruction is inconsequential. McQuay does not cite to any case, statutory or other law, requiring the State, once it has asserted a possible motive, to prove that possible motive. Moreover, the State was still required to prove, beyond a reasonable doubt, all of the essential elements of murder. Because motive is not an element of murder, the State was not required to prove it to sustain a conviction. Consequently, we cannot find that the trial court abused its discretion in allowing State's Instruction No. 5. *See id.*

11

## IV. *Homemade Knife*

McQuay argues that the trial court erred in overruling his objection to the admission of State's Exhibit 15, the homemade knife. It is within the sound discretion of the trial court to admit or exclude evidence. *Hardiman v. State*, 726 N.E.2d 1201, 1203 (Ind. 2000). This court will not reverse the trial court absent an abuse of that discretion. *Id.* A trial court abuses its discretion when its evidentiary ruling is clearly against the logic, facts and circumstances presented. *Id.*

McQuay objected to the admission of the homemade knife based on Ind. Evidence Rule 403. McQuay argued that there was no connection between the homemade knife and Curry's murder. Evid. R. 403 provides as follows: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

As previously stated, Curry had two (2) incisive wounds. Urban determined that whatever produced Curry's wounds must have been fairly sharp. On the day of the murder, a homemade knife was found in a garbage bag that was taken from the wing of the prison where McQuay's cell was located. There was no forensic evidence connecting the homemade knife to Curry's injuries, nor was the homemade knife purported to be the murder weapon. The homemade knife was introduced as a weapon that was found after Curry's murder.

12

Under these circumstances, we find that the probative value of the homemade knife was substantially outweighed by the danger of unfair prejudice. *See* Evid. R. 403. The introduction of the homemade knife was as relevant as introducing anything else that was found on the day of the murder that had no actual connection to the murder. It was also something that could have been used as a weapon; a weapon that could have caused Curry's wounds. Yet, it was not being offered as the murder weapon. Consequently, the trial court's evidentiary ruling was clearly against the logic, facts and circumstances presented. *See Hardiman*, 726 N.E.2d at 1203. Nonetheless, we find that the error was harmless. "The improper admission of evidence is harmless error when the conviction is supported by substantial independent evidence of guilt sufficient to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction." *Headlee v. State*, 678 N.E.2d 823, 826 (Ind. Ct. App. 1997). As previously stated, there was substantial evidence from which the jury could have concluded that McQuay murdered Curry. Accordingly, while the trial court abused its discretion in allowing the homemade knife to be admitted into evidence, we find the error to be harmless.

## CONCLUSION

Based on the foregoing, we conclude that McQuay was properly convicted of murder.

Affirmed.

MATHIAS, J., concurs.

BROOK, C.J., concurs as to Issues I, II, and III, and concurs in result as to Issue IV.

13